NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SANFORD WILLIAMS, JR., :
: Civil Action No. 09-6355 (JLL)
        Plaintiff, :
:
    v. : OPINION
:
JOHN M. DZOBA, et al., :
:
        Defendants. :

APPEARANCES:

Plaintiff pro se
Sanford Williams, Jr.
Somerset County Jail
P.O. Box 3000
Somerville, NJ 08876

LINARES, District Judge

    Plaintiff Sanford Williams, Jr., a prisoner confined at Somerset County Jail in Somerville, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on February 16, 2009, at approximately 11:00 p.m., he was driving south on Kinderkamack Road through a predominantly white community in River Edge, New Jersey. At some point, Officer John M. Dzoba began following Plaintiff, unknown to him at the time, and he ran a license plate check on Plaintiff's automobile. Plaintiff alleges that he had not committed any traffic violations during his drive. Plaintiff does not allege that Officer Dzoba took any further actions with respect to him at that time.

Sometime later, Plaintiff needed to make a stop to use the restroom. After parking his car, he walked to a nearby service station, where a few minutes earlier several persons had shouted to him, "Hey, Do you want some coins, if so, you would have to come and pick them up off the ground." While Plaintiff was picking up approximately $5.00 worth of coins from the ground at the service station, a speeding unmarked car drove up to him. Plaintiff alleges that, in fear, he began to run. Plaintiff alleges that Officer Bartlett then exited his vehicle, drew his

gun, and ordered Plaintiff to put his hands behind his back. Plaintiff alleges that he peaceably followed these instructions, but that Officer Bartlett then grabbed Plaintiff's arm, hiked it high up behind Plaintiff's back, put a choke hold on Plaintiff, and knocked him to the pavement, causing Plaintiff "excruciating pain and serious body injuries."

Plaintiff alleges that Officer Madden witnessed this event, but took no steps to stop Officer Bartlett or to assist Plaintiff. Plaintiff alleges that Officer Dzoba then arrived, while Officer Bartlett had Plaintiff "pinned" to the ground, and did nothing to intervene. He also alleges that Officer Dzoba asked him questions about why he was in River Edge at that time of night.

Plaintiff alleges that he was then taken to the River Edge Borough Police Department, where he was interrogated by unnamed detectives. Plaintiff alleges that he consented to a search of his vehicle, which revealed no evidence of any crime. Plaintiff alleges that Officer Dzoba and other unnamed officers had his vehicle towed to Hackensack, New Jersey, where he had to pay $250 to have it released. Plaintiff alleges that his car was legally parked in a private lot, presented to danger to police officials or others, and should not have been towed.

Plaintiff seeks compensatory and punitive damages.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary;

4

the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not

5

> merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a

6

> claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

7

> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV. ANALYSIS

A. Profiling Claim

Plaintiff alleges that Officer Dzoba engaged in unlawful profiling when he ran a check on Plaintiff's license plate. These allegations fails to state a claim.

"The Equal Protection Clause 'prohibits selective enforcement of the law based on considerations such as race.'" Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 813 (1996)). To make out an equal protection claim in the racial profiling context, a plaintiff must establish that the actions of law enforcement officials "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002) (citations omitted). To establish "discriminatory effect," a plaintiff must show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class. Id.

9

Here, Plaintiff's conclusory allegations are insufficient to state a claim for racial profiling. Plaintiff fails to allege his racial or ethnic background, or the racial or ethnic background of Officer Dzoba. He fails to allege that Officer Dzoba, who ran Plaintiff's license plate sometime after 11:00 p.m., even knew Plaintiff's racial or ethnic background at that time. Plaintiff fails to allege that the checking on the license plate had any "effect" on him whatsoever. The allegations of the Complaint do not suggest that the check of the license plate had any bearing on another officer's decision to arrest Plaintiff after Plaintiff was seen collecting money from the ground at a service station and ran from the scene. This claim will be dismissed with prejudice.

B.  Claim of Excessive Force in Arrest

Plaintiff alleges that, after he had peaceably surrendered, Officer Bartlett hiked Plaintiff's arm high behind his back, put a choke hold on Plaintiff's neck, and threw him to the pavement, causing him pain and unspecified injuries. Plaintiff alleges that Officer Madden witnessed these events but made no effort to intervene. Plaintiff alleges that Officer Dzoba arrived on the scene after he was "pinned" to the ground, but that Officer Dzoba participated in some unspecified manner in his arrest.

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their

persons ... against unreasonable searches and seizures, shall not be violated."

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989), quoted in Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). See also Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor, 490 U.S. 386, 396 (1989). Proper application of this objective reasonableness standard "requires careful attention to the facts

11

and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396; quoted in Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Ultimately, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

A police officer may be liable under section 1983 if the officer fails to intervene and take reasonable steps when an individual is subjected to excessive force at the hands of another officer, even if that officer is a superior. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986) (other citations omitted)). However, the officer must have a "realistic and reasonable opportunity to intervene." Id. at 651 (citing Clark, 783 F.2d at 1007 (instructing the district court upon remand to determine whether the officer was in a position to intervene)); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972) (liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putnam v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981) (liability

12

exists only if the non-intervening officer saw the beating or had time to reach the offending officer).

Here, the allegations of the Complaint against Officers Bartlett and Madden are sufficient to survive dismissal at this screening stage. The allegations against Officer Dzoba, however, are not sufficient to state a claim. Plaintiff does not allege that Officer Dzoba either participated in or witnessed the use of excessive force against him, but rather that Officer Dzoba came on the scene after Plaintiff was "pinned" to the ground. The claim against Officer Dzoba will be dismissed with prejudice.

D.  Claim for Deprivation of Property Without Due Process

The allegations that Officer Dzoba and other officers unnecessarily had Plaintiff's car towed from a location where it was legally parked, precluding him from recovering it until he paid $250, is sufficient to avoid dismissal at this screening stage.

V.  CONCLUSION

For the reasons set forth above, the claims against Offider Dzoba for racial profiling and excessive force in arrest will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim. All other claims will be permitted to proceed past this screening stage. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts

13

sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[1] An appropriate order follows.

                                                  Jose L. Linares
                                                  United States District Judge

Dated: 12/3/10

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

14