UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANFORD WILLIAMS, JR., : | |
| Plaintiff, : | Civ. No. 09-6355 (KM) (MCA) |
| v. : | OPINION |
| JOHN M. DZOBA, et al., : | |
| Defendants. : | |

**KEVIN MCNULTY, U.S.D.J.**

### I.   INTRODUCTION

Plaintiff, Sanford Williams, Jr., is proceeding *pro se* with this civil rights action under 42 U.S.C. § 1983. After initial screening, this action went forward on two claims: (a) that two defendants, police officers Bartlett and Madden, used excessive force when arresting Williams; and (b) that a third defendant, police officer Dzoba, violated Williams's procedural due process rights by towing and impounding his vehicle, which cost $250.00 to retrieve. Each defendant has filed a motion for summary judgment. (*See* Dkt. Nos. 83, 91 & 92.) Mr. Williams has also filed a motion for summary judgment. (*See* Dkt. No. 85.) For the following reasons, the defendants' motion for summary judgment is granted.

### II.   LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and

1

inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to reply summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. Sys. Of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.")

### III.   BACKGROUND

This case was initially assigned to District Judge Jose L. Linares, who did the initial screening pursuant to 28 U.S.C. § 1915. Judge Linares dismissed Mr. Williams's claim that Dzoba engaged in unlawful profiling when he ran a check on his license plate. Judge Linares permitted Mr. Williams's excessive force claims to proceed against Bartlett and Madden, but not against Dzoba. Additionally, Judge Linares permitted Mr. Williams's claim for deprivation of

property without due process to proceed against Dzoba. The following statement of facts focuses on the non-dismissed claims and the summary judgment motions of defendants, and therefore gives due credence to Williams's version of the events.

Mr. Williams was driving his car past a closed Ideal Service Center on Kinderkamack Road in Oradell, New Jersey on February 16, 2009, when several individuals shouted over to him. (*See* Williams Dep. at p. 150.) He testified that they shouted to him, "Yo, hey, you, you want some coins . . . If you do, you're going to have to pick them up off the ground." (*Id.*) Williams pulled his car into what he thought was a public parking lot. (*See id.* at p. 151.) The persons who had called to him were no longer at the Ideal Service Center. (*See id.* at p. 155.) Mr. Williams then noticed coins on the ground about fifteen to twenty feet away from a soda machine. (*See id.* at p. 156.) He picked up approximately five dollars in dimes. (*See id.* at 157.)

At about the same time, the River Edge Police Department requested that the Oradell Police Department respond to a call that a white male was trying to break open a soda machine at the Ideal Gas Station on Kinderkamack Road. (*See* Dkt. No. 92-6 at p. 6.) Officers Madden and Bartlett were dispatched to the scene. (*See id.*)

Meanwhile, after picking up the coins, Mr. Williams began to walk back to his vehicle. (*See* Williams Dep. at p. 166.) As he did so, an unmarked police car sped toward him. (*See id.*) Scared, he began to run away. (*See id.* at p. 168-69.) At that time, no one had gotten out of the car, and Williams did not hear anybody say to him "stop" or "police." (*See id.* at 169.) AS he ran, Mr. Williams then began to hear footsteps, but he did not know then that it was a police officer. (*See id.* at p. 173-74.) Williams then went over a guard rail and down an embankment through the thickets. (*See id.* at p. 178.)

At the bottom of the embankment, Mr. Williams saw Officer Bartlett, five or six feet away from him, with his gun drawn. (*See* Williams Dep. at p. 181.) Bartlett told Williams to stop and put his hands behind his back, and Williams complied. (*See id.* at 182.) Officer Madden then emerged from the thickets. (*See id.*) Bartlett put his gun in his holster, grabbed Williams's left arm and hiked it up behind his back, put his arm behind Williams's shoulder and flipped Williams to the ground. (*See id.*) Williams estimates that two to three second elapsed from his arrival at the bottom of the embankment and Bartlett's flipping him to the ground. (*See id.* at p. 194.) At the time Bartlett did this, Williams had not been handcuffed or otherwise restrained. (*See id.* at p. 189.) Shortly thereafter, however, Mr. Williams was picked up and handcuffed. (*See id.* at p. 191.) He was arrested.

Mr. Williams immediately felt pain in his shoulder when Bartlett flipped him to the ground. (*See id.* at p. 191.) He was in pain after the incident as well. A few weeks later, a medical examination indicated a thickness tear of tendons along with bursitis and synovitis. (*See* Dkt. No. 85-2 at p. 15.)

Near the point at which Mr. Williams had jumped over the guard rail, the officers recovered a black bag. The bag contained a sledge hammer, screw driver, pry bar, flashlight and coins. (*See id.* at 83-6 at p. 2.)

At or about the time of his arrest, Mr. Williams consented to a search of his vehicle. (*See* Dkt. No. 83-7 at p. 1.) The vehicle was towed and searched. Williams eventually had to pay $250.00 to redeem his car from the impound yard. (*See* Dkt. No. 1 at p. 13.)

Williams was eventually found guilty of criminal mischief and possession of burglary tools. (*See* Dkt. No. 83-9 at p. 1.) A count for theft was dismissed. (*See id.*)

## IV.   DISCUSSION

A. <u>Defendant Bartlett</u>

Bartlett has filed a motion for summary judgment dismissing the claim that he used excessive force in arresting Williams. Bartlett contends that his actions were objectively reasonable under the circumstances and that he is entitled to qualified immunity.

Qualified immunity incorporates a two-part test. *See Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194 (2001). One part is a determination of "whether 'the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier*, 499 F.3d at 201). The second part is a determination of "whether the right that was violated was clearly established, or in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 207 (quoting *Saucier*, 533 U.S. at 202). The steps need not be analyzed in that order; courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, summary judgment will be awarded in favor of Bartlett because there are no genuine, material issues of fact, and I find that he did not violate Mr. Williams's constitutional rights in effecting the arrest.[1]

This excessive force claim is analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a

---

[1] In light of this finding, it is unnecessary to consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

5

'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment. *See Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham*, 490 U.S. at 395, *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). The relevant inquiry is an objective one: "whether the officer's actions are 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The U.S. Court of Appeals has elaborated, enumerating some relevant considerations:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenge conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often faced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396.

*Couden*, 446 F.3d at 496-97.

Mr. Williams claims that Bartlett used excessive force against him when he grabbed his left arm, put it around his shoulder and flipped him to the ground. To determine whether Bartlett used excessive force, I need to examine all of the circumstances which presented themselves to

him. That comes down to a legal judgment, because there is no genuine material issue as to what those circumstances were or as to how much force Bartlett applied.

There is no dispute that Bartlett was responding to a call that a man was attempting to break open a soda machine. Bartlett pulled up and found Mr. Williams in an area where a crime reportedly had taken place, or was taking place. As the car pulled into the lot, Williams fled, jumping over a guardrail, into a thicket, and down an embankment. Williams says he did not know when he ran that his pursuers were police officers, but he certainly recognized that fact when these uniformed officers caught up with him. At the bottom of the embankment, Bartlett confronted Williams from a distance of only a few feet. (Madden then emerged from the underbrush.) In a space of two or three seconds (Williams estimated the time), Bartlett had to decide how to respond. Williams, he had seen, had fled, was standing, and was not then under any restraint. What Bartlett did, according to Williams, was put Williams in a hammerlock and flip him over onto the ground—fairly standard procedure for a forcible arrest. Bartlett then stood Williams up (or permitted him to stand) and handcuffed him. Based on these undisputed facts, there is no triable issue as to the use of excessive force. material issue of fact outstanding as Bartlett did not use excessive force under the circumstances as he perceived them.

I do not rely solely on flight, although a suspect's present inclination and ability to flee may support a reasonable decision to apply force. *Couden* names several other factors that should be considered as well. These, too, favor a finding that the force used was not excessive. Bartlett had little to react; he did not know whether there would be resistance, and Williams was only two to three feet away. The police did not have an overwhelming force advantage; there was only one other officer, and he was only just arriving. Williams was not independently

restrained, by handcuffs or anything else; the force was not applied to a person already under sufficient restraint, but only for the proper purpose of effectuating the arrest.

Analyzing these relevant factors from the perspective of a reasonable officer on the scene, in light of the facts that have emerged from discovery, I find that Bartlett's use of force could not be found excessive by a jury properly instructed as to the law. Mr. Williams' claim that he did not know his pursuers were police officers is minimally relevant, if relevant at all. The relevant inquiry is not a subjective one as to Mr. Williams; rather, the Court must ask whether the officer's actions were objectively reasonable based on the facts know to them. *See Couden*, 446 F.3d at 497 (citing *Graham*, 490 U.S. at 396).

Bartlett's motion for summary judgment will be granted as there is no genuine material issue of fact as to whether Bartlett's use of force was excessive.[2]

B. Defendant Madden

Mr. Williams's complaint and deposition testimony make it clear that his claim against Madden is that Madden failed to intervene when he saw Bartlett use excessive force. Madden has filed a separate motion for summary judgment arguing that he is entitled to qualified immunity. As I did above, I look first to the issue of whether the record establishes a constitutional violation at all. Because it does not, I do not consider whether any such violation should have been obvious to a reasonable officer.

Under some circumstances, an officer's failure to intervene may give rise to a claim:

---

[2] At one point, Mr. Williams also appeared to assert a failure to train claim. (*See* Dkt. No. 1 at p. 1 ("The River Edge Boro Police Department Officials shows that the police officers were unsupervised and improperly trained as well as the Oradell Police Department.").) To sustain a claim based on a failure to train, "the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) (internal quotation marks and citation omitted). And of course it must be identified. Here, the inquiry is moot. Because there is no constitutional injury at all, there can be no claim that a constitutional injury resulted from inadequate training.

8

> Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *accord Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). However, an officer is only liable if there is a realistic and reasonable opportunity to intervene.

*Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (citations omitted).

Madden's motion for summary judgment will be granted for two reasons. First, as detailed above, Mr. Williams failed to establish that there is a triable case that Bartlett used excessive force against him, and I therefore granted summary judgment to Bartlett. If Bartlett did not use excessive force in the first place, then Madden cannot be secondarily liable for failing to intervene. *Accord Stewart v. Moll*, 717 F. Supp. 2d 454, 463 (E.D. Pa. 2010) (finding because officer did not use excessive force, other officer cannot be liable for failing to intervene).

Additionally, and in the alternative, there is no substantial evidence that Madden had a realistic or reasonable opportunity to intervene before Bartlett acted. As previously stated, Mr. Williams was only a few feet away from Bartlett when he arrived at the bottom of the embankment. Williams himself estimated that a mere two or three seconds elapsed before Bartlett put his hands on Mr. Williams and flipped him to the ground. Madden arrived at or around the same time as this was taking place. In light of Bartlett's quick reaction, as well as the short duration of Bartlett's application of force, I find that Madden is entitled to summary judgment on the issue of whether he had a reasonable and realistic opportunity to stop Bartlett. *Accord Ickes v. Borough of Bedford*, 807 F. Supp. 2d 306, 330 (W.D. Pa. 2011) (finding that given the quick sequence of events, no reasonable trier of fact could conclude that defendant had

a realistic and reasonable opportunity to intervene when the events surrounding the arrest were too momentary); *Davis v. Egbert*, No. 07-2135, 2010 WL 2326251, at *8 (D.N.J. June 7, 2010) ("In light of the speed with which these events transpired, the Court finds that there was no realistic or reasonable opportunity for [officer] to intervene.") (citing *La v. Hayducka*, 269 F. Supp. 2d 566, 581-82 (D.N.J. 2003); *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1998)).

Accordingly, Madden's motion for summary judgment will be granted.

C. <u>Defendant Dzoba</u>

Defendant Dzoba has moved for summary judgment on Mr. Williams's claim that Dzoba violated his procedural due process rights by towing and impounding his vehicle, forcing Williams to pay a $250.00 charge to recover it from the impound lot. Dzoba, too, asserts qualified immunity. I find that there is no genuine material issue of fact requiring trial as to this claim.

Routine claims of property deprivation or damage, even at the hands of a State officer, are not automatically constitutional claims.

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, *4 (D.N.J. Oct. 2, 2012). New Jersey provides a post-deprivation remedy for unauthorized deprivation of property by public employees through the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1, *et seq.*

10

This case presents no challenge to an overall state procedure; on the contrary, Mr. Williams claims that Officer Dzoba's actions in causing his vehicle to be towed from the parking lot were unauthorized. State tort law is the forum for such claims. Mr. Williams had the option to sue under the New Jersey Tort Claims Act for the fairly minimal damages that he claims. *Accord Bailey v. Gibbons*, No. 09-4119, 2011 WL 4056202, at *12 (D.N.J. Sept. 12, 2011) (finding that plaintiff cannot recover on procedural due process claim against police officers because option to sue for trespass and conversion was available to her under the New Jersey Tort Claims Act). There is an adequate post-deprivation state remedy that protected Mr. Williams's procedural due process rights.

Summary judgment will therefore be granted to Dzoba.

D. Mr. Williams's Motion for Summary Judgment

As I have determined that there are no material issues of fact, and that Mr. Williams's claims must be dismissed, I will also deny his cross-motion for summary judgment. Within that motion for summary judgment, however, is an application to amend the complaint.

In general, leave to amend a complaint is freely granted under Federal Rule of Civil Procedure 15(a). But not always:

> A district court may deny leave to amend a complaint if plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, the court may deny a request if the movant fails to provide a draft amended complaint[.] [S]ee *Lake v. Arnold*, 232 F.3d 260, 374 (3d Cir. 2000).

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Mr. Williams seeks to supplement and amend his complaint in a few respects. First, with respect to the dismissed unlawful profiling claim, formerly asserted against Dzoba, he seeks to substitute in Craig M. Casey as defendant. Second, he seeks to add Casey as a defendant to his

excessive force and procedural due process claims. Third, he seeks to add a claim that he was deprived of adequate medical attention after his arrest because he was not taken to the hospital. (*See* Dkt. No. 85-5 at p. 3-9.) Mr. Williams's application to amend his complaint will be denied.

First, Mr. Williams failed to provide an all-inclusive draft amended complaint with his motion. He merely describes the claims he would seek to include. For that reason alone, I may deny the motion to amend.[3] *See Cureton*, 252 F.3d at 273; *see also Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 367 (3d Cir. 2010). In light of Williams's *pro se* status, I might otherwise be inclined to be lenient as to that procedural misstep, but there are other sufficient reasons to deny the motion.

This motion to amend the complaint, after the close of discovery, comes late in this case, which bears a 2009 docket number. I am mindful that "delay alone is an insufficient ground to deny leave to amend." *Cureton*, 252 F.3d at 273 (citation omitted). But the time factor because more significant when the delay is undue, and "delay may become undue when a movant has had previous opportunities to amend a complaint." *Id.* This is Mr. Williams's fourth request to file an amended complaint. He has had many opportunities to file a properly supported motion, but has not done so.

Mr. Williams claims that he became aware of Casey's involvement only recently. Discovery provided in this case, however, demonstrates that he was or should have been aware of Casey's alleged involvement at least a year before he filed the current application to amend the complaint.

---

[3] This reason to deny the request to amend the complaint is further supported by the fact that Mr. Williams has had prior motions to amend his complaint denied by Magistrate Judge Hammer, Indeed, Judge Hammer explained to Mr. Williams on numerous occasions that he needed to include an all-inclusive proposed amended complaint with his motion. (*See* Dkt. No. 37 at p. 2-3 n.1, Dkt. No. 52 at p. 2 n.5 & Dkt. No. 72.)

12

The current claims involve three defendants and the events surrounding his arrest. Mr. Williams now seeks to add a new defendant. He also seeks to add a new claim that is based on entirely distinct legal and factual theories, requiring assessment of, *inter alia,* his medical condition and whether an officer should have perceived the necessity of taking him to a hospital. The new defendant would be entitled to, and the new claims would probably require, additional discovery. The Third Circuit has held that the assertion of new legal theories and claims can constitute substantial or undue prejudice to the non-moving party, justifying denial of leave to amend. *See Cureton,* 252 F.3d at 273.

Nor is there a demonstration of justification for the delay in asserting these new matters. Deliberate indifference to Williams's serious medical needs is not the kind of claim that would have first come to light only recently. By its nature, it was not concealed, but obvious. Mr. Williams was necessarily aware of whether he received medical treatment. If he thought it was wrongfully denied on the night of his arrest, he could and should have included such a claim in his original complaint.

Accordingly, for these foregoing reasons, Mr. Williams's summary jnudgment motion and application to amend his complaint will be denied.

E. Request for Appointment of Counsel

Mr. Williams has also filed a motion for the appointment of counsel. (*See* Dkt. No. 90.) Indigent persons raising civil rights claims have no absolute constitutional right to counsel. *See Parham v. Johnson,* 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is

likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See Tabron v. Grace*, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993); *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (per curiam) (reiterating the *Tabron* factors).

Mr. Williams has presented his case adequately, and the fairly simple facts have been sufficiently explored in discovery. I have found that, in light of the record (which consists largely of the sworn testimony of the few participants), there is no meritorious legal issue. I will deny Mr. Williams's request for the appointment of counsel.

## V. CONCLUSION

For the following reasons, defendants' motions for summary judgment will be granted and Mr. Williams's motion for summary judgment, request to amend the complaint and request for the appointment of counsel will be denied. An appropriate order will be entered.

Dated: June 26, 2014

/s/ Kevin McNulty
KEVIN MCNULTY
United States District Judge